United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAWRENCE ROWE, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:24-cv-00489 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| JAMES A. DORIS and | § | |
| CAMBER ENERGY INC, | § | |
| Defendants. | § | |

**OPINION & ORDER
GRANTING MOTION TO DISMISS**

The motion to dismiss by Defendants James Doris and Camber Energy, Inc, is granted. Dkt 18.

1. Background

Camber Energy, Inc, and Viking Energy Group, Inc, merged in October 2021. This putative class action is brought by Viking shareholders as to that merger. Dismissed in prior, separate litigation were claims brought by Camber shareholders. See *Coggins v Camber Energy Inc*, 693 F Supp 3d 736 (SD Tex 2023). A very detailed factual background is presented there, including robust detail of the many disclosures made in public filings by Camber and Viking towards their eventual merger. Id at 739–46. Such details are incorporated here but won't be repeated.

Camber and Viking at all relevant times were public companies incorporated under the laws of Nevada, with their principal executive offices located in the same office space in Houston, Texas. Dkt 1 at ¶¶15–16. Defendant James Doris was at all relevant times the President and Chief Executive Officer of Viking, along with being a

director. Id at ¶14. He was also its controlling shareholder. Id at ¶25. Plaintiff Lawrence Rowe was an owner of Viking common stock. Id at ¶13.

The joint proxy statement with respect to the subject merger exceeded four hundred pages of specification and detail. The complaint includes an internet link and repeatedly references it. See Dkt 1 at ¶9 n3. Defendants attach it to their motion, and it may properly be considered on motion to dismiss. See Dkt 18-2; *Braun v Eagle Rock Energy Partners, LP*, 223 F Supp 3d 644, 647–49 (SD Tex 2016).

Camber and Viking were small-cap energy companies before the merger, with both incorporated in Nevada and based in Houston. Dkt 18-2 at 28, 109. The common stock of Viking traded on an over-the-counter exchange, while Camber's traded on the NYSE American Stock Exchange. Id at 3. The board of directors of Viking was comprised of three individuals. One was Doris. The other two were independent, being (i) Lawrence B. Fisher, a partner at Orrick, Herrington & Sutcliffe in New York, with considerable experience in securities law, and (ii) David Herskovits, an audit partner at Deloitte, also with considerable experience. Id at 205–06.

Camber and Viking engaged in substantial negotiations in 2019 and 2020, resulting in multiple amended merger agreements that contemplated Camber acquiring Viking as a wholly owned subsidiary. Id at 145–57. But merger talks were paused in favor of direct equity investments from Camber when it encountered historical accounting issues that required resolution with the SEC. Id at 156–57. The first of those transactions occurred in December 2020, resulting in (i) Camber acquiring a fifty-one percent interest in Viking's common shares, and (ii) Doris (who was then Viking's CEO) becoming Camber's CEO to lead the aligned companies. Ibid. Camber made additional equity investments in 2021, bringing its ownership of Viking common stock to just over sixty percent. Id at 236. Even so, this majority stake didn't translate to voting control over Viking. Doris instead

maintained that through his preferred Viking stock, as was plainly disclosed. Id at 238, 272.

The complaint refers to certain Viking assets that Plaintiff says contributed to Viking's "significant and growing value," including its "largest subsidiary." Dkt 1 at ¶114. These were purchased with money from Camber through the investments highlighted above. Dkt 18-2 at 238. Likewise, money and stock from Camber helped extinguish approximately $20 million of Viking debt in 2021. Id at 304. Camber also made other cash advances to Viking. Id at 289. And, with respect to debts of Camber to Discover Growth Fund from its Series C convertible shares (as discussed in *Coggins*, 693 F Supp 3d at 742–46), Viking guaranteed that debt, thus granting Discover a first-priority security interest in certain Viking assets and placing Viking on the hook if Camber defaulted. Dkt 18-2 at 306. Both in terms of assets and liabilities, then, Viking and Camber were inextricably linked.

Camber ultimately resolved its historical accounting issues with the SEC and observed improved market conditions in 2023. Camber and Viking then returned to merger negotiations. Id at 158. It was recognized that Doris held "positions at both companies, and so "Camber determined that, to the extent any direct negotiations were required between the parties, a director other than Mr. Doris would lead such discussions." Ibid. The parties updated the existing terms of the proposed merger agreement from February 2021 to "reflect passage of time," but "largely maintained the business terms of [their] previous agreement." Id at 159. They each also retained independent advisors to opine on the fairness of the transaction to the companies' respective shareholders, being (i) Scalar, LLC, for Viking, and (ii) Mercer Capital Management, Inc, for Camber. Ibid.

The proxy statement also detailed certain opportunities, liabilities, regulations, and economies of scale presented by the merger. This included that:

- o   The merger would "provide economies of scale, enhanced ability to secure financing and raise

3

- capital, cost savings opportunities and enhanced opportunities for growth" for the intertwined companies. Id at 169.
- The 1:1 exchange ratio, by which Viking shareholders would receive one Camber share for each Viking share, would result in an "implied premium to holders of Viking Common Stock [of] 255%" based on closing prices for the two companies on April 12, 2023. Id at 164.
- Despite contribution by Camber of over sixty percent of the estimated market value of the combined company, Viking shareholders would own "approximately 68.7%" of the combined company. Id at 165, 169.
- The combined company would "maintain Camber's listing" on the NYSE, despite Viking previously trading on an over-the-counter market, thereby "increasing the liquidity of the combined company's stock." Id at 169.
- If the merger did *not* occur and Camber failed to maintain its NYSE listing, that would constitute a default by Camber in favor of Discover, which might have difficult consequences for Viking under their subject guarantee and securitization arrangement. Id at 73, 90; Dkt 1 at ¶125.

Scalar issued its opinion that the merger was "fair, from a financial point of view, to the holders of Viking Common Stock." Dkt 18-2 at 169, 455–57. The board of directors of Viking likewise unanimously approved the merger. Id at 28. Viking and Camber then jointly issued their proxy statement. The shareholders of Camber and Viking voted to approve the merger, which then closed. See https://www.sec.gov/Archives/edgar/data/1309082/000147793223005462/cei_ex991.htm (August 1, 2023).

No Viking shareholder sued to enjoin the merger or complained that the proxy statement omitted information

4

necessary to cast an informed vote. Plaintiff instead waited until six months after the merger closed before naming only Doris and Camber as defendants. Notably unnamed is Viking itself. Likewise unnamed are the two other independent directors of Viking, who (as noted above) unanimously voted in favor of the merger.

At base, Plaintiff alleges that Doris withheld material information from the joint proxy statement through self-dealing. Dkt 22 at 10. He contends that Doris knowingly engaged in fraudulent misconduct by orchestrating the merger to secure "special treatment for his Viking Series C shares by arranging the transaction to convert those shares into newly issued Camber Series A Convertible Preferred Stock." Dkt 1 at ¶6. And each share of Camber Series A Convertible Preferred Stock could then be converted into almost nine hundred shares of the combined company's common stock. Ibid. He also suggests that because this advantageous conversion for Doris wasn't conditioned on investment in the company, it "would leave stockholders with a smaller slice of exactly the same pie." Ibid. He also generally alleges that the merger was financially unfair to the shareholders of Viking, and that the proxy statement omitted material information. Id at ¶¶101–25.

Plaintiff purports to state three claims. The first asserts that Doris breached his fiduciary duty to Viking shareholders in his corporate capacities with Viking, as its President, Chief Executive Officer, and one of its directors. Id at ¶¶139–42. The second asserts that Doris breached his fiduciary duty as the controlling shareholder of Viking. Id at ¶¶143–47. The third asserts that Camber aided and abetted the alleged breaches of fiduciary duty by Doris. Id at ¶¶148–51.

Pending is a motion by Doris and Camber to dismiss the complaint with prejudice. Dkt 18.

2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is

5

entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 557.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citation omitted). But courts don't accept as true what are simply conclusory allegations, unwarranted factual inferences, or legal conclusions. See *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citation omitted).

### 3. Analysis

Nevada corporate law "determines the existence and scope of [fiduciary] duties" in cases involving Nevada corporations. *Hollis v Hill*, 232 F3d 460, 465 (5th Cir 2000). Viking was at all relevant times a Nevada corporation. The parties thus agree that Nevada law governs the claims at issue here. See Dkt 18 at 12; Dkt 22 at 9.

#### a. Fiduciary duty claims against Doris

The complaint alleges that the merger was "conflicted" because Doris stood "on both sides" as "the CEO, President, and a director of *both* Viking and Camber" and could vote his majority Viking interest in favor of it. Dkt 1 at ¶¶ 2, 100 (emphasis original). The complaint suggests that the merger was a sham, calling it a "controller buyout" transaction that lacked requisite "strict protections," thus nullifying the business judgment rule—with specific citation to *Delaware* law. Id at ¶77 n11, citing *Kahn v M&F Worldwide Corp*, 88 A3d 635 (Del 2014).

The problem with the theory is that the fiduciary duties attendant upon Doris arose under *Nevada* law, as noted above. And the robust and developed statutory framework that governs Nevada corporations and their transactions such as the merger precludes action on the facts here. Several provisions of the Nevada Revised Statutes bear emphasis.

*First,* Section 78.138 defines the Nevada business judgment rule, along with its expansive nature and applicability. Section 78.138(3) provides in relevant part:

> [D]irectors and officers, in deciding upon matters of business, are presumed to act in good faith, on an informed basis and with a view to the interests of the corporation. A director or officer is not individually liable for damages as a result of an act or failure to act in his or her capacity as a director or officer except as described in subsection 7.

7

Section 78.138(7) then in turn provides:

> Except as otherwise provided [by other provisions of law or in the articles of incorporation], a director or officer is not individually liable to the corporation or its stockholders or creditors for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless:
>
> (a) The presumption established by subsection 3 has been rebutted; and
>
> (b) It is proven that:
>
> (1) The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer; and
>
> (2) Such breach involved intentional misconduct, fraud or a knowing violation of law.

Section 78.138(8) caps this off, providing that Section 78.138 "applies to all cases, circumstances and matters, including, without limitation, any change or potential change in control of the corporation unless otherwise provided in the articles of incorporation or an amendment thereto."

*Second,* Section 78.140 concerns restrictions on transactions involving interested directors or officers. Section 78.140(1) provides:

> A contract or other transaction is not void or voidable solely because:
>
> (a) The contract or transaction is between a corporation and:
>
> (1) One or more of its directors or officers; or
>
> (2) Another corporation, firm or association in which one or more of its directors or officers are directors or officers or are financially interested;

> (b) A common or interested director or officer:
>
> (1) Is present at the meeting of the board of directors or a committee thereof which authorizes or approves the contract or transaction; or
>
> (2) Joins in the signing of a written consent which authorizes or approves the contract or transaction pursuant to subsection 2 of NRS 78.315; or
>
> (c) The vote or votes of a common or interested director are counted for the purpose of authorizing or approving the contract or transaction,
>
> if one of the circumstances specified in subsection 2 exists.

Section 78.140(2) provides four such circumstances, with the first two being:

> The circumstances in which a contract or other transaction is not void or voidable pursuant to subsection 1 are:
>
> (a) The fact of the common directorship, office or financial interest is known to the board of directors or committee, and the directors or members of the committee, other than any common or interested directors or members of the committee, approve or ratify the contract or transaction in good faith.
>
> (b) The fact of the common directorship, office or financial interest is known to the stockholders, and stockholders holding a majority of the voting power approve or ratify the contract or transaction in good faith. The votes of the common or interested directors or officers must be counted in any such vote of stockholders.

*Third,* the Nevada Revised Statutes provide certain default restrictions on "acquisition[s] of a controlling interest" in the corporation and on "combinations with interested stockholders." NRS §§78.378–.3793, 78.411–.444. But corporations can "expressly elect[ ] not to be governed" by the default provisions. Id §§78.434(1), 78.378(1). Viking's 2008 articles of incorporation expressly did just that. Dkt 18-2 at 219–20; see also Dkt 18-3 at 29 (Nevada articles of incorporation of Viking's predecessor).

Under these controlling provisions of statutory law, the Nevada Supreme Court has rejected the sort of conflicted-transaction theory alleged here by Plaintiff. In *Guzman v Johnson*, a former shareholder of an acquired company sued the company's directors (which included the allegedly conflicted directors) along with the non-director controlling shareholder, "alleging that they breached their fiduciary duties to her and the other minority stockholders in connection with the transaction." 483 P3d 531, 535 (Nev 2021). As here, the *Guzman* shareholder-plaintiff "argue[d] that when a stockholder challenges an interested fiduciary's corporate dealings, the business judgment rule is rebutted as a matter of law and the burden shifts to the interested fiduciary to prove good faith and the inherent fairness of the challenged transaction." Id at 536.

The dissent invoked Delaware law and the same protections sought by Plaintiff as cited in his complaint, including the decision in *Kahn v M&F Worldwide Corp*. See id at 540–42; see also Dkt 1 at ¶77 n11. To the contrary, the Nevada Supreme Court affirmed dismissal on the pleadings, holding that "a litigant who sues directors or officers of a corporation individually for breach of fiduciary duty must satisfy *both* requirements of NRS §78.138(7), which provides the *sole method* for holding individual directors liable for corporate decisions." Id at 535 (emphasis added). This means that the exclusive statutory basis for director and officer liability under Nevada law "requires the claimant to (1) rebut the business judgment rule and (2) demonstrate a breach of fiduciary duty

10

involving intentional misconduct, fraud, or another knowing violation of the law." Id at 536.

*Guzman* thus clearly departed from Delaware law. In doing so, it specifically "conclude[d] that the inherent fairness standard cannot be utilized to rebut the business judgment rule and shift the burden of proof to the individual directors." Id at 537; see also *In re Newport Corp Shareholder Litigation*, 507 P3d 182, 2022 WL 970210, at *4 (Nev 2022, unpublished disposition): "The cases shareholders provide do not substantiate their claims because they apply Delaware's less-forgiving inherent-fairness standard to assess the directors' actions, which Nevada does not."

Such precedent is binding and directly undermines Plaintiff's basic theory that "the mere allegation that a director was an interested party in the transaction rebuts the business judgment rule." *Guzman*, 483 P3d at 533–34. And he can't avoid that result simply by suing only Doris, as the interested director and controlling shareholder, while entirely ignoring the fact that the board of directors of Viking unanimously approved the merger. Such approach would again be contrary to other provisions of Nevada law.

The Nevada Revised Statutes elsewhere provide that "the board of directors has full control over the affairs of the corporation." NRS §78.120(1). And the Nevada Supreme Court observes that Nevada's "business judgment rule does not only protect individual directors from personal liability," but also "expresses a sensible policy of judicial noninterference with *business decisions* and is designed to limit judicial involvement . . . so long as a minimum level of care is exercised in arriving at the decision." *Wynn Resorts, Ltd v Eighth Judicial District Court in & for County of Clark*, 399 P3d 334, 342 (Nev 2017) (emphasis added). It thus rejects the view that "the business judgment rule applies only to individual directors and officers and not the Board itself." Ibid. "To rebut the business judgment rule via an allegation of a breach of the duty of loyalty, shareholders must show that

11

self-interest impacted *a voting majority of the Board.*" *Newport*, 2022 WL 970210, at *2 (emphasis added) (collecting cases). As noted above, the Nevada Revised Statutes expressly permits independent board members to approve transactions that involve a common or interested director. NRS §78.140(2)(a).

The glaring refusal by Plaintiff to sue, allege wrongdoing by, or even mention the two independent directors who also voted to approve the merger is contrary to these principles. And it's a path that's been rejected previously. Applying Nevada law, the Delaware Court of Chancery referred to this as an "atypical pleading situation" of "suing only" one director, while holding that it doesn't remove the obligation on the plaintiff to "allege disloyal conduct, and thereby rebut the business judgment standard," with respect to "at least half of" the directors voting in favor of a merger. *Hamilton Partners, LP v Highland Capital Management, LP*, 2014 WL 1813340, at *15 (Del Ch). And it concluded that such a "dearth of references" to, or well-pleaded allegations about, the conduct of those *other* directors meant that the allegations couldn't rebut the business judgment rule as to what was, in reality, a decision of the *entire* board of directors—the majority of whom were independent. Id at *19.

Plaintiff also contends by way of supplemental authority that a recent decision by the Nevada Supreme Court purportedly (and silently) upended the watershed conclusions of *Guzman*. See Dkt 27, citing *Capital Advisors, Ltd Liability Co v Wei Heng Cai*, 548 P3d 1202 (Nev 2024). That decision has summary language noting that the "business judgment rule's presumption of good faith" may be rebutted by showing that a director or officer had a personal relationship in the transaction "or" by showing that the director failed to exercise due care in reaching the decision. Id at 1208, citing *Guzman*, 483 P3d at 537, and *Wynn Resorts*, 399 P3d at 343. That in no way means that pleading the self-interest of a single officer or director is sufficient. For *Guzman* on its face squarely rejected the contention that "the mere allegation that a

director was an interested party in the transaction rebuts the business judgment rule." 483 P3d at 533–34; see also *Newport*, 2022 WL 970210, at *2 (emphasis added): "To rebut the business judgment rule via an allegation of a breach of the duty of loyalty, shareholders must show that self-interest impacted *a voting majority* of the Board."

That's what's lacking here—any suggestion that "a voting majority" of the Viking board was compromised by self-interest. Instead, the vote was unanimous, with a majority of directors being independent and in mind of full disclosure made as to the self-interest of Doris in the transaction. On the other hand, the plaintiffs in *Capital Advisors* sued *a majority* of the board for wrongdoing and lack of independence. See 548 P3d at 1206; see also Dkt 28 at 2 (citing and attaching underlying complaint alleging that "board was comprised of a majority of interested directors"); cf *Tsatas v Airbone Wireless Network, Inc*, 2023 WL 2756525, at *4 (D Nev) (involving no independent directors because all "helped themselves to unrestricted shares while the rank and file got only restricted"); *In re AMERCO Derivative Litigation*, 252 P3d 681, 698, 700 n10 (Nev 2011) (majority of board lacked "disinterestedness and independence," with board "not asked to consider the [relevant] transactions").

Plaintiff also argues that, even if that conclusion pertains to Doris in his *corporate* capacities, it doesn't apply to his conduct as a *controlling shareholder*. Dkt 22 at 20–21. Yet it's a "basic tenet that controllers have a right to vote their shares in their own interest." *In re Synthes, Inc, Shareholder Litigation*, 50 A3d 1022, 1041 (Del Ch 2012). And Nevada law is plainly in accord. Section 78.140(2)(b) is set out at length above, with one of the "circumstances in which a contract or other transaction is not void or voidable" being "[t]he fact of the common directorship, office or financial interest is known to the stockholders, and stockholders holding a majority of the voting power approve or ratify the contract or transaction in good faith. The votes of the common or interested directors or officers must be counted in any such vote of

13

stockholders." That's all that happened here with respect to Doris as controlling shareholder—his director and financial interest were known to the other shareholders, and he was entitled to have his vote counted towards the result. What's more, the conclusion in *Guzman* applied equally to the controlling shareholder—a corporate entity that wasn't an officer or director. See 483 P3d at 538–39; see also id at 539 (noting failure to show how controlling shareholder "improperly influenced the decision to the minority shareholders' detriment" or otherwise acted "fraudulently or unlawfully").

Defendants elsewhere in their motion amply specify the boilerplate nature of the factual allegations, together with their inadequacy under Rule 12(b)(6) to either rebut the business judgment rule or demonstrate intentional misconduct, fraud, or a knowing violation of law by Doris. See Dkt 18 at 19–24. Such argument needn't be reached. The breach-of-fiduciary-duty theory itself, as pleaded in the complaint, cannot proceed under Nevada law.

The motion to dismiss will thus be granted as to the claims for breach of fiduciary duty by Doris in his various capacities with Viking. Dkt 1 at ¶¶139–42 (as President, Chief Executive Officer, and one of its directors), ¶¶143–47 (as controlling shareholder).

### b.  Aiding-and-abetting claim against Camber

A claim for aiding and abetting breach of fiduciary duty under Nevada law requires the plaintiff to show that (i) a fiduciary relationship exists, (ii) the fiduciary breached the fiduciary relationship, (iii) a third party knowingly participated in the breach, and (iv) the breach of the fiduciary relationship resulted in damages. *In re Amerco Derivative Litigation*, 252 P3d 681, 701–02 (Nev 2011).

It's determined above that Plaintiff can't establish the second point—an underlying breach of fiduciary duty by Doris. The claim against Camber for aiding and abetting thus fails and will be dismissed. Dkt 1 at ¶¶148–51.

### 4. Potential for repleading

Rule 15(a)(2) states that a district court "should freely give leave [to amend] when justice so requires." The Fifth Circuit holds that this "evinces a bias in favor of granting leave to amend." *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (quotation marks and citation omitted). But the decision whether to grant leave to amend is within the discretion of the district court. *Pervasive Software Inc v Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir 2020).

The deficiencies noted in the complaint aren't simply ones of inadequately pleaded fact. They are instead fundamental to the entirety of the purported legal basis. Defendants note in this regard that Plaintiff declined to amend and provided no indication of additional facts available to cure such defects at the requisite pre-motion conference. Dkt 18 at 20. And Plaintiff in response neither denies this nor suggests additional facts that could now be brought to bear. Dkt 22 at 24.

Any attempt at repleading would be futile and thus will not be allowed. See *Heinze v Tesco Corp*, 971 F3d 475, 485 (5th Cir 2020) (finding no abuse of discretion when district court dismissed PSLRA claim with prejudice due to futility of any attempt at repleading).

### 5. Conclusion

The motion to dismiss by Defendants James Doris and Camber Energy, Inc, is GRANTED. Dkt 18.

This action is DISMISSED WITH PREJUDICE.

A final judgment will enter separately.

SO ORDERED.

Signed on March 31, 2025, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge